UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robert Yernatich,                                      Civ. No. 11-978 (PAM/LIB)

                         Plaintiff,

v.                                              **MEMORANDUM AND ORDER**

St. Louis County, Deputy
Robert Tarr, individually and
in his official capacity, and
Deputy Jason Ackerson,
individually and in his official
capacity,

                         Defendants.

---

This matter is before the Court on Defendants' Motion to Dismiss.  For the reasons

that follow, the Motion is granted in part and denied in part.

## BACKGROUND

On the morning of April 4, 2005, in Virginia, Minnesota, two St. Louis County deputy

sheriffs pulled over a car driven by Plaintiff Robert Yernatich, who had a suspended drivers'

license.  While the deputies were approaching the vehicle, they saw Yernatich put something

in his mouth.  They suspected that he was ingesting a controlled substance and tried to get

him to spit it out.  He refused.  They then transported him to the hospital, where a mouth

swipe revealed the presence of a controlled substance.

Because of fears that Yernatich might overdose on whatever substance he ingested,

the deputies sought and obtained a search warrant for a blood test.  According to Defendants,

the hospital required a urine test before it would release Yernatich to the custody of the deputies, but Yernatich refused to participate.  Thus, again according to Defendants, the hospital catheterized Yernatich.  Yernatich's version of the story is different: he contends that the deputies ordered him to urinate in a cup and, when he refused, ordered hospital staff to insert a catheter into Yernatich's penis and held him down as the nurse complied with their order.  Yernatich also contends that he requested an attorney multiple times but was never allowed to contact an attorney, that the deputies sprayed him with pepper spray and otherwise physically mistreated him, and that he suffered injuries as a result.

**DISCUSSION**

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts alleged in the complaint as true.  See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  The Court must construe the factual allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citations omitted).  The complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Yernatich objects to the Court considering the public record of the underlying criminal case against Yernatich, contending the Twombly line of Supreme Court cases foreclosed the consideration of matters outside the pleadings.  But this fundamentally misapprehends both the "public records and matters necessarily embraced by the complaint" exception to the

2

usual rule that the Court considers only the Complaint in evaluating a motion to dismiss, see Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999), and what the Supreme Court decided in Twombly and its progeny.  If necessary, the Court may consider matters of public record when evaluating a motion to dismiss.  Yernatich's contentions to the contrary are without merit.

Count I of Yernatich's Complaint claims that Defendants, acting under color of state law, violated Yernatich's constitutional rights in violation of 42 U.S.C. § 1983.  Count II alleges that St. Louis County violated § 1983 by failing to appropriately discipline, train, or otherwise supervise its deputy sheriffs.  Count III claims that there was a conspiracy among Defendants to violate Yernatich's civil rights in violation of 42 U.S.C. § 1985.  Count IV claims that the deputies were negligent in their treatment of Yernatich.  Count V raises a claim for negligent infliction of emotional distress, and Count VI contends that the County is liable for negligent supervision, training, and retention.  Count VII alleges that the County is responsible for the actions of the deputies under the doctrine of respondeat superior.  Yernatich claims damages of more than $50,000, and seeks a declaration "mandating a change in policy and procedures in St. Louis County which insures an appropriate system of hiring, retention, supervision and discipline for acts of misconduct," among other relief.  (Compl. at 12-13.)

## A.      Qualified Immunity

Defendants argue that Yernatich has failed to make out a claim for a violation of his constitutional rights and that, even if such a claim can be construed from the allegations in the Complaint, the deputies are entitled to qualified immunity.   But the Complaint sufficiently alleges that the deputies violated Yernatich's constitutional rights, and the rights alleged were clearly established: the right to have an attorney, the right not to be subjected to unreasonable searches and seizures, and so forth.   At this early stage of the litigation, the Court cannot and will not determine whether the facts alleged are actually true.   This portion of the Motion must be denied.

## B.      Respondeat Superior and Conspiracy

Defendants contend that there is no evidence that St. Louis County had a custom or policy that was the moving force behind the alleged constitutional violations.   But Yernatich does allege such a policy (Compl. ¶ 55), and for the purposes of this Motion, that allegation is taken as true.   Dismissal of this Count is not appropriate.

However, the allegations in the Complaint that the deputies and the County conspired to violate Yernatich's rights are not plausible on their face.   To sustain a claim for a conspiracy to violate constitutional rights under § 1985, Yernatich must allege some "class-based, invidiously discriminatory animus."   Bray v. Alexander Women's Health Clinic, 506 U.S. 263, 268 (1993).   He has failed to allege such an animus here, and the Court cannot conceive of what that animus might be.   Yernatich's § 1985 conspiracy claim must be dismissed.

C.      **State Claims**

1.      <u>Notice</u>

Defendants first argue that Yernatich failed to comply with the notice requirement of section 466.05, which provides that "every person . . . who claims damages from any municipality or municipal employee acting within the scope of employment . . . shall cause to be presented to the governing body of the municipality within 180 days after the alleged loss or injury is discovered a notice stating the time, place and circumstances thereof . . . ." Minn. Stat. § 466.05, subd. 1. As Yernatich points out, however, the statute goes on to provide that "[a]ctual notice of sufficient facts to reasonably put the governing body on notice of a possible claim shall be construed to comply with the notice requirements of this section." <u>Id.</u> The notice requirement of section 466.05 only applies to state-law torts, not to federal claims or claims based on state statutes. <u>Montgomery v. Indep. Sch. Dist. No. 709</u>, 109 F. Supp. 2d 1081, 1101 (D. Minn. 2000) (Tunheim, J.).

Yernatich claims that the required notice was provided by the police reports filed in the underlying criminal proceedings. At oral argument, Yernatich's counsel offered no further explanation or elucidation of how these reports ostensibly provided the County with notice of the plethora of claims he raises in this litigation. It is difficult to imagine a situation in which a police report regarding the arrest and search of a suspect would serve to put a municipality on notice that the arrested person might, six years hence, file a civil-rights lawsuit against the municipality.

Although the notice requirement must be liberally construed, here there is simply no

indication that St. Louis County or either of the deputies had actual or constructive notice of any of Yernatich's claims.  His state claims against the County and against the deputies in their official capacities are therefore dismissed for failure to comply with section 466.05.

      2.    <u>Statute of limitations</u>

Even if dismissal for failure to comply with the statutory notice requirements was not warranted, however, Yernatich's state claims would still fail because they are time-barred.  As Defendants contend, Yernatich's state claims are in fact alleging intentional torts, although they are couched as negligence claims.  In Minnesota, intentional torts have a two-year statute of limitations.  Minn. Stat. § 541.07.  Yernatich brought his claims nearly six years after the events described in the Complaint, and thus his claims are time-barred.

Yernatich attempts to evade this conclusion by describing his negligence claims as claims that the deputies had a duty to use reasonable force against him and breached that duty by using excessive force, causing him injury.  This, however, is an excessive force claim, not a negligence claim.  Under Yernatich's theory, every intentional tort could also be transmuted into a negligence claim: for example, the assailant had a duty not to assault the plaintiff and breached that duty by assaulting the plaintiff.  This stretches negligence too far.

Yernatich's state claims are intentional torts.[1]  He failed to raise those claims within

---

[1]  Even the claim for negligent infliction of emotional distress, which has a six-year statute of limitations, is here based on intentionally tortious conduct for which the statute of limitations has run.  Thus, the emotional distress claim likewise fails.  <u>Jones v. Indep. Sch. Dist. No. 720</u>, No. C9-02-1205, 2003 WL 1702000, at *3 (Minn. Ct. App. Apr. 1, 2003).

the statutory limitations period for intentional torts, and those claims must therefore be dismissed.

**CONCLUSION**

Plaintiff has failed to plausibly allege a conspiracy to violate his constitutional rights. He failed to provide the required statutory notice of his state tort claims, and those claims are time-barred in any event.

Accordingly, **IT IS HEREBY ORDERED that** Defendant's Motion to Dismiss (Docket No. 2) is **GRANTED in part** and **DENIED in part**, and:

1.      Plaintiff's federal conspiracy claim is **DISMISSED with prejudice**; and

2.      Plaintiff's state-law claims are **DISMISSED with prejudice**.


Dated:   July 29, 2011

                                                  s/Paul A. Magnuson
                                                  Paul A. Magnuson
                                                  United States District Court Judge